Please be seated. Your Honor, it's the second case in the morning, called 211-832 and 212-158 in re Estate of Pellico. On behalf of Mr. Pellico and 11832, Mr. Daniel Volker. On behalf of Mr. Pellico and 212-158, Mr. Richard Lamb. And on behalf of Public Artistry Page 9, Mr. Robert G. Lamb. Thank you. Mr. Volker, your name is listed first. How many minutes are you going to spend? Seven and a half, Your Honor, if that's okay with the court. We might even give you eight. Okay, thank you very much. I appreciate that. Okay, very well. You may proceed. Thank you, Your Honors. Justices, may it please the Court, Counsel, my name is Daniel J. Volker. I represent Gregory Pellico as the appellant in this matter. I'm going to refer to the circuit court that supervised the public guardian, that's the guardianship court, to distinguish it from the probate court, both obviously parts of the circuit court system. The issues in play in Appeal Number 0832, which I'm dealing with, are limited to whether the guardianship court has jurisdiction to award fees after the probate court appointed an executor for Evelyn Pellico's estate and whether the guardianship court exceeded its statutory authority under the Only Probate Act in awarding those fees. The simple answer to that question, we believe, is yes. Let's start with the argument that the circuit court exceeded its statutory authority when it granted the public guardian's second, third, and fourth fee petitions from trust belonging solely to Greg Pellico for costs incurred in services performed after the ward died. Counsel, my recollection is your argument is a little bit narrower than what you've said, and that is that it's not just when the case is filed in probate, but it's upon issuance of letters? Well, under 24-19, Your Honor, the guardianship court cannot exercise any jurisdiction once the petition for letters is filed. I call that kind of a temporary lack of jurisdiction. Once the petition for letters is approved by the probate court, which happened in this case about a month and a half or two months after the ward died, the guardianship court under the statute clearly loses all jurisdiction whatsoever to administer the guardianship estate. Isn't administering the estate different than just setting fees, though? The only thing the guardianship court can do would be to direct the guardian to preserve the assets of the estate. The guardianship court cannot do anything other than that under 24-19 because it expresses states that once the petition is filed, and then again once the petition is approved, that the only court that has jurisdiction to deal with the estate is, in fact, the probate court. And there's a real good reason for that, rather. In Henry Gevis, which I know Your Honors, in Pellico, one believed was overruled by Steinberger, which we respectfully disagree with, the Gevis court did lay out very nicely at the end of the decision why you can't have two circuit courts of Cook County administering the same estates of the same estates because the problems that arise when the right hand is doing what the left hand is doing, et cetera. What year was Gevis? Gevis is 1999. Steinberger is 2001. And what Gevis says basically, Your Honor, is that I don't think Gevis was any magical statement of a landmark rule of law. It was the rule of law as it has existed since 1964 when the Constitution was amended to give the circuit courts general jurisdiction throughout the land, essentially. But what Gevis basically says is that when you create, when the legislature creates a new cause of action that didn't exist in county law, that the legislature has the right to define what is judiciable under that new claim for relief. And therefore, in a sense, by doing that, limit the jurisdiction of the circuit court. Not limiting it from something else, but describing what the controversy, what the relief, what the remedy can be under this newly created legislation. In this case, the Probate Act was not known in common law. It's a creature of the legislature. So again, under 24-14, 24-19, 24-12, 24-19, in this case, the facts are important because what happened was Greg Pelico, who was named in the will as the executor, filed within 30 days of the ward's death a petition for letters. That petition was granted about a month and a half later. At that point in time, under any reading of the statutes, the Probate Court, the guardianship court had absolutely no authority, no statutory authority whatsoever to even entertain a motion for fees, much less grant a motion for fees. What happened here, which is unfortunate, is the Probate Court simply stayed, meaning further proceeding, as to the estate and let the guardianship court take over. Now, the Probate Court erred in doing that. There's no statutory authority for the Probate Court to do that, and there's no authority for the guardianship court to do that. So you're saying the proper procedure then for the fees for the public guardian would have been what? The procedure would have been that the public guardians, the extent that they had claims for fees that were legitimate, they would file those in the Probate Court and ask the Probate Court to adjudicate their reasonableness. In this case, the second, third, and fourth fee petitions, Your Honor, were filed one year after Mr. Pelico was appointed. The third, fourth, and fifth were filed years later after Mr. Pelico was appointed the executor of the estate.  So the decedent's wishes were not followed in this case. Well, following Justice Pence's question, which I think he directed at the powers or what the guardian should have done, my question is what should the trial court judge have done upon issuance of letters? Should the trial court have dismissed the case, discharged the guardian, and done anything else? Or should he have ordered the transfer of assets from the guardian to the executor? Or should he have entered an order of accounting? Or what should he have done? Because from what you're telling this court, he should have done nothing because he lost jurisdiction the second, the moment that your client received the letters. That's correct, Your Honor. That's what the statute says. And so my response is that when that petition was granted... What paragraph or section of the statute actually says what I just said? 24-19, Your Honor, says specifically that once the Probate Court grants the petition for letters, the guardianship is essentially permanently prevented from taking any further action, has no further statutory authority whatsoever. That's the clear blame meeting of 24-19. Okay. Now, where does it say specifically that the court is automatically prevented, precluded, enjoined from exercising any jurisdiction? It doesn't use the word jurisdiction. It uses the word... What it says is straightforward, Your Honor, is that... I can read it to you if you'd like to hear it. I thought you already read it to me, and I have a good enough memory to realize or remember that you only cited this section with regard to the guardian, and it said nothing about the trial court judge or the trial court presiding over the guardianship. Well, what 24-12 says is that the office of the guardianship over the ward terminates immediately upon the death of the ward. 24-19... 24-12 and 19 also indicate that the only action that the guardianship court can take pending a petition for letters in a probate court is to preserve the assets, and the Supreme Court has confirmed that. Preserving the assets meaning collecting monies, but doing nothing more than that. 24-19 says that the guardianship court has to wait at least 30 days, Your Honor, to do anything to see if somebody files a petition for letters. In this case, on the 30th day, Mr. Pellico filed his petition for letters, which was granted. At that point in time, under the statute, the guardianship court permanently lost any statutory authority or jurisdiction to act whatsoever in connection with this estate, and therefore should not have entertained the second, third, fourth, or fifth fee petitions. In fact, the court did deny the fifth fee petition ultimately on the ground that it lacked jurisdiction. You're talking about the one that was filed after the discharge, or within 30 days of the discharge? The fifth petition was filed years later, Your Honor. I thought the only one that he refused to entertain or allow to be filed, at least, was the one that was filed after the guardian was discharged? The first fee petition was granted because it was filed before the ward died. It was for services before the ward had passed away. The second, third, fourth fee petitions and fifth fee petitions were all filed after the ward had died. For services, Your Honor. But I thought the average warder was granting judgment on those, did he not? He granted judgment on two, three, and four. Okay. And then ultimately, he closed the estate. He declared the estate, the guardianship estate, closed years later. And then when the public guardian went in to try to get the fifth fee petition granted, he denied that on the grounds he no longer had jurisdiction. But was that before or after discharge? It was after discharge. But, again, the public guardianship, as a matter of law, and it's as clear as day, under 2412 and 2419, under the Enriquez decision, among others, should have been terminated once those petitions for letters were granted. And that didn't happen. Therefore, these fee petitions are decisions which are void, and the decision should be reversed. Okay. I think you've covered it. Thank you, Your Honor. Thank you. May it please the Court. My name is Richard Lane. I think the issue that trumps everything that in my section of it is that the trusts were not assets of the estate of Evelyn Pellico. Once she died, the trust passed by the trusts, and it was air to allow the public guardian to still access the funds from those trusts, which now belong to somebody else. The law is very clear that the trust assets pass outside of the settler's estate. And to rule otherwise would mean that there's no purpose to trust law. So I think that when the ward died in November of 2006, there were about $35,000 in fees that involved the period before her death. The remaining approximately $150,000 in fees that were taken from the Peter Pellico, the Evelyn Pellico Trust, and joint bank accounts were all, had nothing to do with her care or anything to do with the ward. They were fighting about the fees of the public guardian, and they were taken from somebody else's property, not from property of the ward. So even if the court can administer the estate of the ward, these trusts were not part of the estate of the ward. Well, I thought that Mr. Black indicated that this might be deemed to be forfeited or collaterally a stop because this argument wasn't, I don't remember it being raised in the first appeal as to whether or not the court had, the trial court had jurisdiction with an alternative argument being that not only did it not have subject matter jurisdiction, but it didn't have jurisdiction over the trust because, as you say, the tax outside of the guardianship. Well, of course, Pellico I involved actions that occurred before the death of the ward, so that issue never really came up in Pellico I because they were talking about what happened during her life. Well, isn't it also true that while she was alive, the trust could be deemed an asset of hers? She was a beneficiary of the trust. I think that the trusts are not technically part of anybody's estate. Trusts are trusts. They pass outside of it. She was a beneficiary of the trust. Now, could they access assets to which she had a right to for her benefit? That's Pellico I, and I believe that involves what happened before she died. But once she died, those assets passed by operation of law to somebody else, and it would be exactly like going out on the street and asking a stranger, could we please have $150,000? Those were no longer assets, and it wasn't, it was raised so repeatedly, and I give sites in the reply brief that the trial judge even said that would be a standing objection to it. But the issue, it wasn't waived in Pellico I because Pellico I involved what happened during her lifetime, that first fee petition. That was all that was involved in Pellico I. There are a number of other issues. Of course, if the trusts were not assets of the estate, they don't even arise. But if the guardian did administer the trusts, he had fiduciary duties to the beneficiaries of the trusts in administering them, and the fact is he did absolutely nothing to pay real estate taxes, to utility bills, anything, and much of the litigation was trying to force him to do something with the trusts. They sat on the assets of the trusts through the great crash of the stock market, and if he was a trustee in fact, not in law, he had a fiduciary duty of a prudent investor to maintain those trusts. Having done nothing, he should receive no fees, and all the fees that were after Adam Pellico's death was litigating essentially his own fees. I'm having a problem with the general statement that doing nothing is not a benefit. I'm sorry? Well, we were all children at one time, I hope, and there were times when we hoped that our parents would do nothing. That's correct. Because if they did something like spank us or punish us, discipline us, we wouldn't personally consider it to be beneficial. So when you say he did nothing, ergo it's wrong, especially in that milieu or that economic situation, I don't take that as a proper syllogism. You're going to have to explain to me a little bit more why doing nothing, when apparently he should have done something, and if he should have done something, what was it that he should have done that he didn't do? Pay real estate taxes. He should pay utilities. If the stock market is crashing, I think that would be what would a reasonable investor do, and I don't think we can decide as a matter of law nothing is a reasonable step. What does paying real estate taxes have to do with the stock market? It doesn't have anything to do with the stock market, but it has to do with his fiduciary duties in being in charge of these trust funds, and he fought at every step to do it. And they lost some money, is that what you're saying? They lost some value. Yes. And it's good millions and millions of other people. I said millions and millions of other people. That's true. I agree with that. Thank you. Thank you. Mr. Black. Good morning, Your Honors. Counsel, may it please the Court, my name is Robert G. Black, and I'm appearing this morning on behalf of the intervener, Estate of Robert I. Mork. What's been overlooked so far is the court order of July 31, 2006, which this Court affirmed in Pellico I, and that order creates the guardianship, orders the guardianship, tells the public guardian that the public guardian must control the trust and the trust's assets, and that Gregory is to provide an accounting within 21 days. This order remained unabated. There was an order in December of that year, after Mrs. Pellico passed, that said the guardianship will continue, the temporary guardianship will continue, as to the estate, not as to the person because it could not, and the matter proceeded. What is also being overlooked here are the various findings of the trial court throughout this case that the public guardian did everything that he was required to do by court order, that this matter could have been concluded within months if Mr. Pellico had cooperated, that the public guardian could not do anything more with this freeze of assets without the court approval, that the case, all the way through this, that the extra litigation was caused by Mr. Pellico's actions, and Judge Sheen, in fact, in the July 27, 2011, I believe it was, hearing, said 90 percent of this litigation was caused by Mr. Pellico's actions. It should have been a simple thing. That's all being overlooked here. There are specific findings by the trial court. Now, as to the letters of office, okay, where was it raised to the guardianship court? You're saying it was raised in the probate court? I don't know if it was raised in the probate court. But it wasn't raised here? It was not raised in the guardianship case. It was never raised in the guardianship case. We're here seven years later, after seven years of litigation, and we're arguing letters of office before this court, when those letters of office were never placed before the guardianship court, and the guardianship court was never asked to address that point. Now, even if that were not the case, the letters of office are not as simple as counsel wishes everyone to believe here. If you look at that probate case, and the little I know about it is that, well, first of all, my understanding here, generally speaking, letters of office issued, okay, but there is no ownership at that point. Nothing is done. Nothing is resolved. Ownership comes along once the accounting is presented and approved. Got to be another court order there. That's my understanding, okay? What is going on in that case is there is a significant contest between the brothers that is still ongoing. It is a contest to the will, and it is a contest to the trust, the Amon-Pellico trust, based upon undue influence, based upon lack of capacity. Now, I understand that matter was up yesterday morning before Judge Bonnie Wheaton. Judge Bonnie Wheaton did continue that matter to, I think, November, a date in November, November 19, I want to say, pending the outcome of this appeal. But the letters of office issue that was never raised before the guardianship, or in the guardianship action, doesn't make it that simple. It doesn't automatically transmute ownership to someone. It doesn't automatically trump everything the guardianship court is doing. I'm not sure that that was the argument that I heard, though. I thought the argument related more to when letters are issued, the guardian loses any authority over the estate. I query about not just the guardian, but the trial court. Correct. And the complexities that you're referring to don't strike me as being matters that relate to whether or not subject matter jurisdiction attaches, because that seems to be the argument that was being raised relative to the issuance of letters, was that without statutory authority, there is no subject matter jurisdiction. I agree that is the argument that's being made, and maybe I wasn't focusing in sufficiently on that aspect of it, because the argument is there is no subject matter jurisdiction based merely upon the letters of office. If this was a subject matter jurisdiction issue, where was it addressed? It was not addressed. But the fact of the matter is there are still things going on in that probate court that contest the letters of office. The matters here are not necessarily as automatically or as easily resolved as they would otherwise be. That is my position, Your Honor, in a nutshell, in terms of the letters of the office. What about the possible dichotomy between the guardian having authority to act, as opposed to no longer having authority to act sua sponte, but rather by order of court? The entire case is up here based upon the fact the guardian acted pursuant to order of court. The guardian did everything that the court ordered as of July 31, 2006, that the court reaffirmed as of its order of December 2006, and again, the court made numerous specific findings that I find that the public guardian did everything here in the interest of the estate and followed the orders of the court. If you go to the July 27, 2011 transcript, which is in the supplemental record, which Mr. Pellickel's counsel never touches about in any detail, there are not just one instance where the court made these numerous findings. You've got a court order that obligates the public guardian to do certain things. The public guardian follows the court order. The court finds that the public guardian followed the court order, and then the court discharges the public guardian. I don't know that you have yet to address Mr. Lange's argument that the trust passed outside of the guardianship, and therefore they should not be subject to the guardians' fees. The trust were ordered part of the guardianship by way of that same July 31, 2006 order that this court affirmed. As to the status of the case on first appeal, yes, we were dealing primarily with a petition for fees that was incurred up to a certain point, but the issue was whether the petition could be allowed after the ward had passed. The trial court said, no, I don't have subject matter jurisdiction. I don't have personal jurisdiction. This court reversed and found subject matter jurisdiction there. That was a point at which this whole aspect of passing to the trusts that are not assets of the state could have been raised. Could have been raised at that point. That's part of the whole subject matter, the penumbra of subject matter jurisdiction. It was not raised. Now it's raised X amount of years later. And I guess, Your Honor, I struggle a little bit, too, with the meaning of estate here. Okay? I understand what an estate is vis-a-vis other assets subject to probate. Is that the same word that's being used here when a guardian is appointed as the guardian of an estate? Their position is it is the same thing. Estate is estate is estate. My position is that's not correct. There were assets that were part of the trust that were placed here as part of the protection of the estate, part of the administration of the estate. But what does one have to do with the other? That's my question. We also have raised, Your Honor, the fact that nobody contested the discharge of the public guardian. And, in fact, Mr. Pellico acquiesced in the discharge of the public guardian. And as to that point, we have a motion pending that without that sort of direct challenge, there's really nothing to appeal here. I also would like to cite, for Your Honor, a couple more things. Okay? I believe the Wellman case says that. And in the Wellman case, the Supreme Court says the guardian's responsibilities and duties to the property ends only upon being discharged. This is what happened here. The court entered an order. The public guardian, as the court found, followed that order. Then the public guardian was discharged. The court found, again, looking at that July 27 transcript, that Mr. Pellico had wrongfully withdrawn funds that should have been in part of the estate the guardian was protecting, that Mr. Pellico had increased the litigation here by numerous filings. There were previous findings of the, you know, kind of the obstreperous nature that interfered with the administration of the guardianship and the estate. Also, turning to Pellico I again, and this whole reliance upon Section 2412, Section 2419, this court in Pellico I, after it decided on subject matter jurisdiction, after it decided personal jurisdiction, and then when it considered that the public guardian could be paid by statute for reasonable time and expenses after the death of the ward, said in terms of Section 2412 as plain worded in the meeting, is the guardianship terminated such that the public guardian can no longer act on her behalf. I read that to mean quite specifically as to the person, obviously. As to the plain and ordinary meaning of Section 24-19, this court ruled once a guardian is discharged by the court, then the public guardian no longer has control of the ward's assets. And there again, discharge is the key, as this court found in Pellico I. We do also have our separate appeal on the issue of the court's finding that it lacked jurisdiction to consider the fifth petition for fees. That petition for fees was in fact filed within 30 days of the discharge order, and the trial court felt that that was a matter for the appellate court. It no longer had jurisdiction over that. We're contesting that ruling. In addition, we are contesting the trial court's finding that post-judgment interest was not ordered throughout the entire time before there was payment. Any other comments? No. I have one. All right. I'll say something, and then you can think in the background as to whether or not you have any further comments. All right. You also have a motion, I think, that we haven't ruled on relating to taking judicial notice of other litigation between the parties. And I'm not sure whether the reply time has passed or not. Gentlemen, did you receive a copy of the motion to take judicial notice? We did. Were you going to file a reply to it? If the court would like a reply, yes. I believe when no briefs were filed by the appellees in the case and Mr. Black's not being convened, it was our understanding there wouldn't be any further files. I could address the motion to take judicial notice right now. You want to do that during your rebuttal? Yes. I wasn't doing a rebuttal, but I can address it maybe in a minute. Okay. Any further comments? As to the motion to take judicial notice, we have cited the fact that there are three other lawsuits pending by Mr. Pellico involving the estate and technically the office of the public guardian. A lawsuit filed in DuPage County, a lawsuit filed in the Illinois Court of Claims, federal court action. I'm sorry, I thought you were going to say something. I was going to say if we take judicial notice, what's the significance of taking it? I suppose just so this court is fully aware of everything that's going on for no other purpose, really. Well, if the trial court has subject matter jurisdiction, what's happening elsewhere is the same. Of no moment, I would agree. At least that's my off-putting. I believe the motion, I know the motion was just sort of, you know, just kind of the edification of what else is going on here. Okay. Anything else? No, Your Honor. Although, because we did have the separate appeal, I don't know if there would be time for rebuttal as to that or whether that would even be. I'm sorry? We did have the separate appeal on the public guardian's aspect. You want to make argument as to whether? We'll see. If I don't reserve it. You can stand on your briefs. If you have any other questions. No. Thank you. Unless there are any other further questions, we ask that the orders leading up to final discharge be affirmed. Just out of curiosity. Yes, Your Honor. What is your position relative to when the fee petitions were granted, I think second, third, and fourth. Were they final and appealable or were they subject to some special finding or were they not final and appealable until the discharge was granted? Well, that's an interesting question, Your Honor, that quite frankly I did not take a hard, long look at. I know that there is the provision under 304B that allowed the interlocutory appeal, or at least that was the basis for the interlocutory appeal taken. As I stand here today, I'm sorry that I don't know the answer to that. I don't have a position. I think your argument was that statutory interest should apply. Yes. And I think, correct me if I'm wrong, but statutory interest only works if the judgment is final and enforceable and appealable and all that stuff. That is correct. If it's not final and appealable with the magic 304A about enforceability, then I don't know that you would be entitled to interest. Although, did the trial court deny interest or did it say it didn't have jurisdiction to consider interest? What the trial court did in relation to the fourth fee petition, where there was a delay in terms of Mr. Pellicox issuing some paperwork that the shareholders wished before they would release the funds, the trial court ruled that there was the ability to collect part of the post-judgment interest there after its ruling there, but only up to a certain time. So I believe that was up until September of 2011, I believe. Okay. So it didn't deny it, didn't say it didn't have jurisdiction, said I'm only allowing it for part of the time. Thank you. Thank you, Your Honor. Mr. Volker, you're standing up. I assume you want to say something. Yes, sir, I do. Thank you. First of all, I didn't hear Mr. Black. I was hoping to hear him answer, I think, what is the $64,000 question. That is, how the guardianship court, given the statutory authority that it had, could possibly exercise jurisdiction over the estate of the ward after the letters were issued to the probate court to Mr. Pellicox. The answer is they couldn't. They can't. The fact of the matter is a court that operates without statutory authority operates without jurisdiction. In regards to this one fantastic point, and at the end of the decision, it's a Supreme Court decision, of course, 1999. At the end of the decision, the court talks about why, specifically in a probate case where there's a guardianship at issue, why the guardianship court has to terminate its authority when letters are issued. So you don't have the kind of problems Mr. Black identified they had. Mr. Pellicox didn't cooperate, he says. He didn't cooperate with the guardianship, with the public guardian. It caused excessive litigation costs. He penned that all on Mr. Pellicox. Mr. Pellicox had no duty, Your Honors, to cooperate with the public guardian because he was appointed by the probate court as the sole person who had the sole authority to deal with those assets. And that's the end of that story. Well, there is a standing court order, right, that he has to comply with. That July 31, 2006, was it? There's a standing order. My point, I think, what I'm trying to make is that's why the Supreme Court says this is the way the courts have to exercise their jurisdiction. Otherwise, you have huge, expensive problems that could be devastating, they say, to the estate. That's what the Supreme Court says, devastating to the estate. And that's what happened here. The public guardian charged $130,000 or more simply trying to collect fees that it claims it was owed when it didn't have the authority. And that's just, it's outrageous, quite frankly. But I want to point out a couple more things, and that is counsel kept saying that subordinate jurisdiction had been waived, hasn't been raised. We all know from the days of law school that subordinate jurisdiction can never be waived under any circumstance. It can be raised for the first time in the U.S. Supreme Court. So that argument is hollow and wrong. More importantly, in the briefs, we point out very specifically how Mr. Pellicox objected vehemently so many times before the guardianship court to the lack, the guardians' lack of jurisdiction, lack of statutory authority. The court said we'll give you a standing objection. Isn't there a difference between statutory authority and subject matter jurisdiction? There is. There is. It is. One is how they're different, but they both come to the same result. And the reason why there's no jurisdiction, according to Henry Gavis, for example, is because there's no statutory authority. So they both kind of come to harmonize. My point, though, I think, that I wanted to make was that Mr. Pellicox argued so vehemently to the probation, to the guardianship court, I'm sorry, that there was no jurisdiction there, that the court said I'm going to give you a standing objection. And that's in the record. We decided that in our brief response to counsel's argument that somebody had waived the subject matter jurisdiction because that just didn't happen. That's just not true. The counsel also referred to the case. Wait a second, counsel. You're saying the trial court didn't grant him a standing objection? No, no. The guardianship court gave Mr. Pellicox a standing objection to the issues he raised, that the public guardian had no statutory authority and no jurisdiction to operate. That's how vehement he was before that court. And to say he waived it when he can't waive it anyway is just plain wrong. Well, I don't know whether Mr. Black said he waived subject matter jurisdiction, but you just said statutory authority. And I'm not sure that waiver necessarily, I agree with you, that subject matter jurisdiction cannot be waived. However, I think that at least for some purposes, Pellico I suggested that the trial court had jurisdiction over the guardian, over Mr. Pellicox, and over the assets of the estate, both before, and now we have to answer the question, after the death of the ward. In Pellico I, Your Honor, the court expressly reserved any judgment on whether or not any future fee petitions, whether the guardianship court would have any authority to grant, entertain or grant, any subsequent free petition. So I would say that that decision- Was it one of the most stoic decisions I've ever read? Well, the decision, Your Honor, is harmonizing with this case because it was for fees by and large that had all been incurred before the ward died. And we would agree that even if the court loses its jurisdiction, it can continue to entertain a petition that's filed for fees before the ward passed away. It's a very simple distinction, I think it's a correct distinction. Thank you, Your Honor. Any further questions? No, but Mr. Lang was going to comment on the motion to take judicial notice. Thank you. Justice McLaren, I think you preempted my comment, which is I don't know what difference it makes. But since it was filed, there are three cases in it. This is a matter of record. There's a case for breach of fiduciary duty in DuPage County. Mr. Pellico has a motion to voluntarily dismiss that case. That motion has been resisted by the guardian, so that's the only reason that case is still alive. The public guardian asserted in that case that exclusive jurisdiction lay in the court of claims. Mr. Pellico thereupon filed a case in the court of claims, which he would just as soon not have. And he did file a 1983 action in U.S. District Court. That's a matter of record, alleging a number of things, including the breach of fiduciary duty. And that's the only case that should remain. So I think the purpose of the motion was to show that Mr. Pellico is litigious. But the five, six years of litigation was Mr. Pellico trying to get out of this thing, and the guardian resisting any efforts he had to terminate this matter. Thank you. Thank you very much. The case will be taken under advisement. It will be a short recess. We have another case in the fall.